## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>Kevin B. Dean,<br><br>Debtor | Chapter 11<br>Case No. 20-20427 |
| Kevin B. Dean,<br><br>Plaintiff<br>v.<br><br>Emile Clavet,<br><br>Defendant | Adv. Proc. No. 21-2002 |

## <u>MEMORANDUM OF DECISION</u>

Kevin Dean intentionally made a false representation of material fact.  He made that false representation for the purpose of inducing reliance by his business partner, Emile Clavet, and Clavet justifiably relied on Dean's false representation.  As a result, Clavet was damaged to the extent of approximately $2.5 million.  There is no room to quarrel with any of this here because each of these findings was made by a state court, following a trial on the merits, in an action involving these same two parties.  But the state court did not stop there; it further found that Dean acted with actual malice toward Clavet, justifying an award of punitive damages in the amount of $750,000.  Based on these findings, the state court entered a judgment against Dean for fraud and breach of fiduciary duty and awarded Clavet damages of approximately $3.25 million.  That judgment was later affirmed by the Maine Supreme Judicial Court.  Despite all of this, Dean believes that the entirety of his debt to Clavet is dischargeable in Dean's chapter 11 case.  Dean is wrong.  The state court judgment establishes a debt for a willful and malicious injury under 11 U.S.C. § 523(a)(6).

By way of background to the parties' dispute, the state court made the following findings: Dean and Clavet were business partners in a number of enterprises, one of which consisted of a marina in Texas that was originally acquired for $2.5 million.  The marina was not owned by Dean and Clavet, but was instead owned by Blue Water, LLC and Covered Marina, LLC.  Dean and Clavet each owned 50% membership interests in the two LLCs.  Dean, who has roots in Texas, managed the marina.

As for the substance of the parties' dispute, the state court made the following findings and conclusions:  Dean intentionally withheld information consisting of an offer from a third party, TCRG Opportunity X LLC, to purchase the marina for $7.5 million, and did so to prevent Clavet from relying on that information.  Dean had a fiduciary duty under Maine law to apprise Clavet of TCRG's offer.  While Dean kept the offer to himself, he persuaded Clavet to sell his membership interests in both LLCs to Dean for significantly less than half of $7.5 million.  Dean executed an agreement to sell the marina to TCRG on the same day that Clavet, without any knowledge of the agreement between Dean and TCRG, sold his membership interests in the LLCs to Dean.  Dean "timed and manipulated his buyout of the [LLC] interests from Mr. Clavet in order to keep the proceeds of the sale to TCRG for himself."  [Judgment p. 6.]  Dean's "scheme to defraud Mr. Clavet of his rightful share of the proceeds of the sale to TCRG" was " brazen."  Id. p. 15.  The "infliction of the economic injury . . . was significant, and was done intentionally" and with actual malice sufficient to warrant the imposition of punitive damages under Maine law.  Id.

There is no hint of negligence or recklessness in the state court's findings.  Instead, the judgment conclusively establishes that Dean's conduct resulted in an injury that was willfully inflicted on his longtime business partner.  See Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a

deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."). Dean deliberately injured Clavet by intentionally keeping the $7.5 million offer from TCRG to himself, while simultaneously persuading Clavet to part with his interests in the LLCs for significantly less than half of $7.5 million.  The amount of Clavet's damages was determined by the state court based on later events, namely, the sale of Clavet's interests in the LLCs and the sale of the marina to TCRG.  But the injury inflicted was the purposeful concealment of information that Dean had a duty to share with Clavet.  The state court judgment leaves no doubt that Dean committed fraud and breached his fiduciary duties to Clavet, all to prevent Clavet from sharing in the marina sale proceeds.  Although Dean now contends that the judgment fails to meet the standard of willfulness—because the state court did not specifically find that he knew that the sale to TCRG would go through—that argument sails wide of the mark.  Willfulness is inherent in the determination that Dean intended to mislead Clavet so that he could keep the proceeds of the sale to TCRG to himself.  That is true both as a matter of logic and, given the preclusive effect of the state court judgment, as a matter of law.[1]

The state court judgment also establishes that Clavet's claim arose out of an injury inflicted maliciously within the meaning of section 523(a)(6).  Specifically, the state court found:

> Mr. Dean has convinced himself that he deserved to keep the profits of his fraudulent scheme.  He implied that he was a better businessman than Mr. Clavet, that he worked longer hours than Mr. Clavet, and that the nature of their relationship had somehow changed that in his view justified concealing the true value of the Marina properties from the person who owned the other half of the

---

[1]   The state court judgment is entitled to the same preclusive effect in bankruptcy that it would receive under Maine law.  *See* R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).  In this proceeding, the applicable preclusive principle is that of issue preclusion (not claim preclusion).  *See* McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 13 n.3 (Bankr. D. Me. 1998).  Under Maine law, issue preclusion "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding."  Portland Water Dist. v. Town of Standish, 940 A.2d 1097, 1100 (Me. 2008) (quotation marks omitted).

> [LLCs].  Mr. Dean told Attorney Bell that he did not tell Mr. Clavet about the
> TCRG transaction because he worked harder than Mr. Clavet. . . .  [I]t is clear to
> the Court that at all pertinent times Mr. Dean had no appreciation or respect for
> the legal reality that he and Mr. Clavet owned the Marina assets equally[.]

[Judgment p. 14.]  These findings, and Dean's attempts to keep the TCRG transaction a secret, led the state court to conclude that Dean had acted with actual malice toward Clavet, justifying an award of punitive damages under Tuttle v. Raymond, 494 A.2d 1353 (Me. 1985).

Under Tuttle, punitive damages express society's disapproval of conduct deemed intolerable, id. at 1355, and are reserved for the deterrence of "truly reprehensible conduct[,]" id. at 1361.  They may be awarded based upon tortious conduct perpetrated either with actual malice, or by means of deliberate conduct that is so outrageous that malice can be implied.  Id. For his part, Dean observes that actual malice under Tuttle is not coterminous with maliciousness under section 523(a)(6).  Compare id. (providing that actual malice exists where the tortfeasor's conduct "is motivated by ill will" toward another) with Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997) (explaining that conduct may be malicious under section 523(a)(6) "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will"), abrogated in part on other grounds by Geiger.  Dean's observation may be correct, but it is not helpful to him here.  Tuttle sets a standard for actual malice that requires a higher degree of culpability than the standard for maliciousness under section 523(a)(6).  See Reynolds-Marshall v. Hallum, 162 B.R. 51, 56 (D. Me. 1993) (observing that malice under section 523(a)(6) requires a lesser showing of wrongfulness than actual malice à la Tuttle), abrogated in part on other grounds by Geiger; see also McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 19-22 (Bankr. D. Me. 1998) (examining section 523(a)(6)'s requirement of malice in the wake of Geiger).

Dean's invitation for this Court to look past the state court judgment and focus, instead, on a prior order of the state court finds no traction either.  Specifically, Dean contends that his failure to advise Clavet of the TCRG negotiations cannot be considered wrongful because the state court previously determined that Dean did not owe a fiduciary duty to Clavet.  However, as explained in the judgment, the state court later revised that determination on Clavet's motion, and conclusively determined that Dean was a fiduciary as to Clavet at all relevant times.  The state court found that Dean breached his fiduciary duties by failing to inform Clavet of TCRG's offer while simultaneously persuading Clavet to sell his interests in the LLCs.  The state court further found Dean liable for fraud based upon that same conduct.  This proceeding does not provide Dean with the opportunity to relitigate that outcome.

Like the debtors in Printy and Old Republic National Title Insurance Co. v. Levasseur (In re Levasseur), 737 F.3d 814 (1st Cir. 2013), Dean violated his obligation not to deceive.  Perhaps he lacked the specific knowledge that his conduct would constitute a breach of fiduciary duty under Maine law.  But there is no question that Dean withheld TCRG's offer from Clavet with the conscious object of preventing Clavet from using that offer when valuing his interests in the LLCs.  Dean does not contend that he did not know that his deception was fraudulent, and he does not ask for a trial on the issue of his state of mind.  In light of that, on this record, there is only one reasonable inference:  Dean had to have known that his scheme was wrongful.  His attempts to keep Clavet in the dark about the sale to TCRG certainly suggest as much, and the judgment contains no hint to the contrary.  There is no reason to suppose that Dean, an experienced businessman with a long history of shared enterprises with Clavet, did not know that that his scheme was wrongful.  The idea strains credulity at best.  In denying Clavet an

opportunity to share in the profits of the sale to TCRG, Dean engaged in a "brazen" scheme—one that was specifically calculated to harm Clavet.

The state court's award of punitive damages also establishes that there was no just cause or excuse for Dean's wrongful conduct and the resulting injury to Clavet (even though Dean had ample opportunity and a powerful incentive to demonstrate just cause or excuse when defending Clavet's claims).[2] How could any court determine that there was just cause or excuse for a tort but at the same time impose a significant punitive damages award based on the tortfeasor's demonstrated personal animus toward the tort victim? *Cf.* NBA Props., Inc. v. Moir (In re Moir), 291 B.R. 887, 892 (Bankr. S.D. Ga. 2003) (concluding that "a judgment for conversion enhanced by punitive damages establishes a wrongful act," done without just cause or excuse for purposes of section 523(a)(6)).

In short, the findings essential to the state court judgment establish that Dean inflicted an injury that was both wrongful and without just cause or excuse and therefore malicious within the meaning of section 523(a)(6). Because Dean's conduct was also willful for purposes of section 523(a)(6)—as discussed above—Clavet is entitled to a judgment excepting his claim from discharge as a matter of law.

Dean attempts to avoid this inescapable conclusion with a roundabout theory about the scope of section 523(a)(6). In Dean's view, section "523(a)(6) is not available in this case" because the conduct in question arguably comes close to, but does not quite satisfy, the more specific exceptions

---

[2] For preclusion to apply to a particular issue, the issue need not have been expressly determined in the prior proceeding; issue preclusion can operate as to a factual determination, even if that determination is not explicit, if the determination constitutes "'a necessary component of the decision reached in the prior litigation.'" Jones v. Svreck (In re Jones), 300 B.R. 133, 137 (B.A.P. 1st Cir. 2003) (quoting Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 31 (1st Cir. 1994)); *see also* Portland Water Dist., 940 A.2d at 1100 (concluding that prior litigation concerning property adjacent to an extension necessarily included parcels at issue in subsequent litigation because those parcels were in fact adjacent to the extension).

to discharge in sections 523(a)(2) or (a)(4).  [Dkt. No. 9, p. 8.]  This perspective could find a

modicum of purchase in the canon against superfluity and the Supreme Court's reluctance to adopt

an interpretation of section 523(a)(6) that would render other portions of the statute superfluous.

*See* Geiger, 523 U.S. at 62.  Since Geiger, however, the Supreme Court has recognized some

inevitable overlap between sections 523(a)(2), (a)(4), and (a)(6), noting that "debtors who make

false representations under § 523(a)(2)(A) could . . . also inflict 'willful and malicious injury' under

§ 523(a)(6)."  Husky Int'l Elecs., Inc. v. Ritz, 136 S. Ct. 1581, 1588 (2016).  The Supreme Court

further observed that section 523(a)(6) "covers debts 'for willful and malicious injury,' whether or

not that injury is the result of fraud[.]"  Id.  Moreover, the First Circuit Court of Appeals has

squarely rejected an argument similar to Dean's, holding that "sections 523(a)(2)(A) and (a)(6) are

not mutually exclusive."  Printy, 110 F.3d at 858.  In reaching this holding, the Court of Appeals

signaled agreement with the view that there "is nothing in the text of section 523(a)(6) which

precludes its proper invocation by an aggrieved party whose claim for willful and malicious injury

sounds in fraud."  Id. (quotation marks omitted).

Here, because the injury that Dean inflicted on Clavet was both willful and malicious,

Clavet's claim is excepted from Dean's discharge under section 523(a)(6).  This is true even though

the state court judgment sounds in fraud and breach of fiduciary duty.  In addition to section

523(a)(6), the parties were invited to brief the dischargeability of Clavet's claim under 11 U.S.C. §§

523(a)(2) and (a)(4), which expressly apply to certain debts arising out of fraud and breach of

fiduciary duty.  Both parties made credible arguments under the rubric of section 523(a)(2).  For

example, Dean asserts that Clavet's claim relates to a false statement respecting an insider's

financial condition and therefore falls outside of section 523(a)(2)(A).  He further asserts that the

state court judgment does not establish the applicability of section 523(a)(2)(B) because it did not

determine that Dean made a materially false statement in writing. Perhaps Congress intended to remove oral false statements about a debtor's or an insider's financial condition from the scope of section 523(a)(2) because it envisioned that the most egregious such statements might be excepted from discharge under section 523(a)(6). The plain language of the statute suggests as much, and construing sections 523(a)(2) and (a)(6) in this manner coheres with the notion that the "opportunity for a completely unencumbered new beginning" in bankruptcy is reserved for the "honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279, 287 (1991) (quotation marks omitted). Section 523(a)(6) should not be interpreted to cover every debt that is tainted by fraud; Dean is right about that much. But some debts arising out of fraud can fit comfortably within the contours of section 523(a)(6), as outlined by the Supreme Court and the First Circuit Court of Appeals, and there is no doubt that this debt is one of them.

As for the amount of the nondischargeable debt, Dean insists that the state court judgment should not carry preclusive effect. He emphasizes that the state court found him liable for breach of fiduciary duty and fraud and imposed both compensatory and punitive damages, without allocating either component of the award to fraud or breach of fiduciary duty specifically. That is of no moment. The state court analyzed fraud and breach of fiduciary duty together because the factual findings germane to the claims overlapped to a significant, if not complete, degree. Dean's fraud vis-à-vis Clavet was the very same conduct that violated the fiduciary duty that he owed to Clavet. There was no need for the state court to apportion damages between two aspects of Dean's conduct or between the two LLCs, which were governed by different state laws. On this score, the judgment can be read in only one way: the state court found that Dean breached his fiduciary duty and engaged in intentional misrepresentation as to his purchase of Clavet's interest in Blue Water (an LLC governed by Maine law) and that the breach and misrepresentation caused Clavet to relinquish

his interests in both LLCs (one of which was governed by Texas law). *See* [Judgment p. 5 n.3.]
The state court further found that "the profit Mr. Dean made and kept to himself at the time TCRG
purchased the Marina properties was the 'proximate consequence' of the fraudulent
misrepresentation that Clavet has proven by clear and convincing evidence." <u>Id.</u> p. 12. Both the
compensatory and the punitive damages were awarded as a result of Dean's fraudulent scheme.
There was no need for a more detailed claim-by-claim or LLC-by-LLC allocation there, and there is
none here because that singular fraudulent scheme was willful and malicious.

This case is not like <u>Spagnuolo v. Brooke-Petit</u>, 506 B.R. 1 (D. Mass. 2014), where the
District Court concluded that a jury verdict was not dispositive as to the amount of a claim excepted
from discharge when the jury found liability on multiple claims, only some of which met the
standard of nondischargeability, and where the jury did not allocate damages to specified conduct
supporting various claims. *See* <u>id</u>. at 7. This case is also distinguishable from cases where a state
court jury verdict did not establish the requirements for section 523(a)(6) because of the particular
state law requirements for punitive damages. *See, e.g.*, <u>Goins v. Day (In re Day)</u>, 137 B.R. 335, 342
& n.10 (Bankr. W.D. Mo. 1992) (concluding that the punitive damages portion of a state court jury
verdict did not fit within section 523(a)(6) because the jury instructions did not require findings of
willfulness *and* maliciousness to support an award of punitive damages).

The entire amount of Clavet's claim is nondischargeable. As the District Court held
previously, section 523(a)(6) encompasses both punitive and compensatory damages that arise from
willful and malicious conduct. <u>Reynolds-Marshall</u>, 162 B.R. at 60. Although neither the Supreme
Court nor the First Circuit Court of Appeals have explicitly ruled on the dischargeability of punitive
damages under section 523(a)(6), Supreme Court dicta supports the holding of <u>Reynolds-Marshall</u>.
*See* <u>Grogan</u>, 498 U.S. at 282 n.2 (1991) (suggesting that "judgments that include punitive damages

are more appropriately governed by § 523(a)(6)" than by section 523(a)(2)(A)).  So does the weight

of the caselaw from other jurisdictions.  *See, e.g.,* Hagan v. McNallen (In re McNallen), 62 F.3d

619, 626-27 (4th Cir. 1995) (collecting cases); *see also* Fischer v. Scarborough (In re Scarborough),

171 F.3d 638, 644 (8th Cir. 1999) ("[W]here the compensatory and punitive damage awards are

based on the same underlying conduct, and the judgment for compensatory damages is

nondischargeable because it is based on willful and malicious injury to another, then the punitive

damages award is likewise nondischargeable.").  Excepting Clavet's punitive damages from

discharge finds further support in the Supreme Court's construction of the phrase "debt for"—which

introduces both sections 523(a)(2) and (a)(6).  In Cohen v. de la Cruz, 523 U.S. 213 (1998), the

Court interpreted that preface broadly, to connote all liability arising from the object specified, and

held that section 523(a)(2)(A) bars the discharge of all liability arising from the debtor's fraudulent

acquisition of money or property, including an award of treble damages.  Id. at 220-21.  Here,

because the punitive damages are liabilities arising from a willful and malicious injury within the

meaning of section 523(a)(6), they are nondischargeable just as the treble damages were

nondischargeable in Cohen.  *See generally* 4 Collier on Bankruptcy ¶ 523.08[4] (16th ed. 2021)

(concluding that the analysis of the text of section 523 in Cohen "strongly suggests its holding is not

limited to section 523(a)(2)").

The Court will, on its own initiative, enter summary judgment for Clavet.  The procedure

may be uncommon, but it is expressly authorized by Fed. R. Civ. P. 56(f)(3).  Dean was afforded an

opportunity file a brief opposing summary judgment along with a concise statement of additional

material facts (beyond the existence and terms of the state court judgment and the decision affirming

that judgment).  [Dkt. No. 4.]  As authorized, Dean submitted a brief and a statement of undisputed

material facts.  [Dkt. Nos. 9-10.]  He did not contend that there were disputes of material fact or ask

for a trial; he asked for the entry of summary judgment in his favor.[3]

The state court judgment is binding on the parties and outcome-determinative here.  Dean

and Clavet may have legitimate disputes, including disputes about the value of various assets

included in the estate and the requirements for confirmation of a plan in Dean's chapter 11 case.

The particular dispute in this adversary proceeding, however, is not a close call in light of the state

court judgment.  Summary judgment will issue in Clavet's favor on Dean's complaint because the

record "compel[s] a determination of nondischargeability as a matter of law."  *See* Gray v. Tacason

(In re Tacason), 537 B.R. 41, 50 (B.A.P. 1st Cir. 2015).

Date: May 7, 2021

_____

Michael A. Fagone
United States Bankruptcy Judge
District of Maine

---

[3] Clavet was afforded the opportunity to file a brief and a reply statement of material facts limited to any additional facts submitted by Dean.  [Dkt. No. 4.]  Clavet replied, as authorized, and also filed his own statement of undisputed material facts.  [Dkt. No. 14.]  Dean then requested a chance to respond to the facts submitted by Clavet, asserting that Clavet's response gave rise to a factual issue precluding summary judgment under section 523(a)(2).  [Dkt. No. 15.]  The Court denied Dean that chance, committing not to consider any materials submitted by Clavet beyond the scope set by the Court's order establishing summary judgment procedures.  [Dkt. No. 16.]  As advertised, the Court has not considered the "Reply SUMF" or the related exhibits submitted by Clavet, confining the analysis to the existence and terms of the state court judgment and the decision affirming that judgment.  Neither of the parties has asked for a trial in this proceeding based on that limited record; instead, each has urged the entry of judgment in his favor.